**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | Case No.: BK 13-_____ |
| | ) | |
| SANITARY AND IMPROVEMENT | ) | **CHAPTER 9** |
| DISTRICT NO. 494 OF DOUGLAS | ) | **PLAN OF ADJUSTMENT** |
| COUNTY, NEBRASKA | ) | |

_____

This Plan of Adjustment (this "Plan") is proposed and made by Sanitary and Improvement District No. 494 of Douglas County, Nebraska (the "District"). The provisions of this Plan have been promulgated to meet the confirmation standards under Chapter 9 of the United States Bankruptcy Code (the "Code"). This Plan should be carefully reviewed in conjunction with the Disclosure Statement which will be filed concurrently herewith, as may be amended by filing with the United States Bankruptcy Court for the District of Nebraska (the "Court").

## I. DEFINITIONS

All capitalized terms shall have the meaning given to them herein, unless context clearly requires otherwise. Capitalized terms defined in the Code and not otherwise defined herein shall have the meaning ascribed to them in the Code.

**Administrative and Priority Claims** shall mean and include the allowed (i) actual and reasonable costs and expenses incurred for services in connection with this case, including the fees of the District's attorneys, accountants and other professionals; (ii) all of the District's cost in preserving the assets of District's bankruptcy estate; (iii) the fees of the Paying Agent or the Disbursing Agent incurred for any services provided prior to the Effective Date; and (iv) any and all other claims granted priority status under Section 507(a) of the Code.

**Board** shall mean the Board of Trustees of the District, as duly elected or appointed under Nebraska law.

**Bond or General Obligation Bonds** shall mean the bonds issued by the District including, but not limited to, the Pre-Petition Bonds and the Post-Petition Bonds.

**Certificate or Certificate of Indebtedness** shall mean the Certificate of Indebtedness issued to Pre-Petition Construction Fund Warrant Holders in exchange for Pre-Petition Construction Fund Warrants.

**Claims** shall mean (i) a claim which has been listed by the District on its schedules and (ii) any other claim as the term is defined in Section 101(5) of the Code.

**Confirmation Order** shall mean the order signed and entered by the Court confirming this Plan.

**Construction Fund** shall mean bond fund/bond sinking fund/construction fund of the District maintained by the County Treasurer of Douglas County, Nebraska, as the ex officio Treasurer of the District, the monies in which are held for the purpose of making payment upon the Pre-Petition Construction Fund Warrants and for the payment of the principal and interest on the Bonds and Certificates.

**Construction Fund Warrant** shall mean those warrants payable from the Construction Fund of the District issued in accordance with Neb. Rev. Stat. §31-755, for capital outlay expenditures and interest including Pre-Petition Construction Fund Warrants and Post-Petition Construction Fund Warrants.

**Creditor** shall mean the owner or Holder of any claim.

**Disbursing Agent** shall mean First National Bank of Omaha.

**Disclosure Statement** shall mean the document filed in this case by the District pursuant to Section 1125 of the Code, as may be amended, modified or supplemented by the District and approved by this Court.

**Effective Date** shall mean the date which shall be ninety (90) days following the Confirmation Order.

**Filing Date** shall mean the date upon which the Petition seeking voluntary relief pursuant to provisions of Chapter 9 of the Code was filed by the District.

**Final Order** shall mean an order of judgment of a court which (i) shall not be reversed, stayed, modified or amended and the time for which to appeal or seek review or rehearing shall have expired or (ii) if appealed, the operative effects of such appealed order or judgment shall not have been stayed or superseded so that the appealed order or judgment is legally enforceable.

**Fiscal Agent** shall mean D.A. Davidson & Co.

**General Fund** shall mean the general fund of the District maintained by the County Treasurer of Douglas County, Nebraska, as the ex officio Treasurer of the District.

**General Fund Warrants** shall mean those warrants payable from the General Fund of the District payable to the payees thereof or to Holder of the same, as assignee.

**Holder** shall mean the person who owns and is legally entitled to receive payment of principal and/or interest on a particular Bond, Certificate, General Fund Warrant or Construction Fund Warrant.

**Paying Agent** shall mean First National Bank of Omaha.

**Petition Date** shall mean the date the Petition initiating this proceeding under Chapter 9 of the Bankruptcy Code is filed with the Bankruptcy Court.

**Pre-Petition Bonds** shall mean those bonds issued by the District on or about June 15, 2008 in the original principal amount of One Million Four Hundred Thousand Dollars ($1,400,000.00).

**Pre-Petition Construction Fund Warrants** shall mean those warrants payable from the Construction Fund of the District issued in accordance with Neb. Rev. Stat. §31-755, for capital outlay expenditures and interest issued prior to the Filing Date.

**Post-Petition Bonds** shall mean Bonds issued by the District after the Petition Date.

**Post-Petition Construction Fund Warrants** shall mean those warrants payable from the Construction Fund of the District issued in accordance with Neb. Rev. Stat. §31-755, for capital outlay expenditures and interest issued after the Effective Date.

**Pro Rata Share** shall mean the interest or fractional interest of any Pre-Petition Construction Fund Warrant Holder (or Certificate Holder), the numerator of which shall be the amount owed on such Pre-Petition Construction Fund Warrant Holder (or Certificate Holder) and the denominator of which shall be the sum of all amounts owed on all Pre-Petition Construction Fund Warrants (or Certificates).

## II. CLASSES AND TREATMENT OF CREDITORS

A.      Administrative and Priority Claim Holders. The Holders of Administrative and Priority Claims shall be paid in full. The Administrative and Priority Claims currently consist of expenses for services rendered by and for reimbursement of out-of-pocket expenses of the District's bankruptcy legal counsel, Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C. ("Croker Huck") of Omaha, Nebraska. Croker Huck shall be paid based upon hourly rates for partners, associates, paralegals, legal assistants and administrators, at standard rates for such particular services.

B.      General Fund Warrant Holders. The owners of the General Fund Warrants shall be paid principal and accrued interest in full. Payment of General Fund Warrants is necessary for the continuation of basic necessities of the District, including basic utilities and reasonable property maintenance expenditures. Within sixty (60) days of the Effective Date, the owners of General Fund Warrants shall be paid in full for all accrued and unpaid interest or principal due and owing under the terms of the General Fund Warrants.  Currently, the outstanding General Fund Warrants total approximately Thirty Seven Thousand and No/100 Dollars ($37,000.00). Thereafter, General Fund Warrants shall be paid in accordance with the stated terms thereof. The owners of General Fund Warrants shall be paid in full and are not impaired, as the term is used in the Code.

C.      Pre-Petition Construction Fund Warrant Holders. The claims of the Holders of Pre-Petition Construction Fund Warrants are impaired, as the term is used in the Code. In full and complete satisfaction of the Claims of the Pre-Petition Construction Fund Warrant Holders, the Pre-Petition Construction Fund Warrants shall be paid in accordance with this Plan.

## III.  REPAYMENT OF PRE-PETITION CONSTRUCTION FUND WARRANTS

A.      Payment and Exchange. Pre-Petition Construction Fund Warrant Holders shall be paid as follows:

1.      Issuance of Certificates of Indebtedness. Within sixty (60) days of the Effective Date, all Pre-Petition Construction Fund Warrant Holders shall be issued Certificates, conditional upon the delivery of such Pre-Petition Construction Fund Warrant, representing the Holders' Pro Rata Share of the funds held in Trust by the Disbursing Agent, as set forth in Article IV below.  All Pre-Petition Construction Fund Warrants delivered to the Disbursing Agent shall be held by such Disbursing Agent in trust for each Pre-Petition Construction Fund Warrant Holder until cancelled by the issuance of the Certificates. All Pre-Petition Construction Fund Warrants which have been delivered to the Disbursing Agent shall be cancelled upon the issuance of the Certificates. In exchange for their Pre-Petition Construction Fund Warrants, each Pre-Petition Construction Fund Warrant Holder will be given a Certificate issued by the District and authenticated by the Disbursing Agent.

2.      Initial Cash Disbursement.  Within sixty (60) days following the Effective Date, all funds held in the Construction Fund shall be allocated as set forth in Article V.  All

funds not otherwise allocated shall be paid to the Certificate Holders based upon the Pro Rata Share of each within ninety (90) days of the issuance of the Certificates.

   3.  <u>Modification of Terms</u>. The balance due on the Pre-Petition Construction Fund Warrants and the manner of computed interest on such warrants shall not change by operation of this Plan. The Plan shall only modify the manner and timeline for repayment of the Pre-Petition Construction Fund Warrants in the following ways:

    a.  No priority shall be granted among the Pre-Petition Construction Fund Warrants based upon the date of issuance, warrant number thereof or the date of registration, including preference for the order or manner in which Warrants are redeemed.

    b.  The time for payment of interest and principal on the Pre-Petition Construction Fund Warrants shall be paid as follows:

     i.  Payments of principal and interest will not be made as required by the original terms of the Pre-Petition Construction Fund Warrants.

     ii.  Pre-Petition Construction Fund Warrants shall cease to independently accrue interest as of the Effective Date.

     iii.  Pre-Petition Construction Fund Warrants not exchanged for Certificates shall be cancelled and terminated and shall provide no right to payment.

     iv.  Certificates shall be deemed to not be in default, so long as the District is not in default of its obligations under this Plan.

     v.  Certificates shall be paid from the proceeds of general ad valorum taxes, collection of special assessments and/or the issuance of Post-Petition Bonds.

### IV. **CERTIFICATE ISSUANCE**

   This Plan requires, and the Bankruptcy Court will be requested as part of the Confirming Order to require, the Holders of Pre-Petition Construction Fund Warrants to deliver to the Disbursing Agent any Pre-Petition Construction Fund Warrants held by any Creditor. No Certificate shall be issued nor shall any payment be made to the Holder of any Pre-Petition Construction Fund

Warrant unless said Holder has delivered to the Disbursing Agent the physical Pre-Petition Construction Fund Warrant issued by the District or, in the event that the Pre-Petition Construction Fund Warrant is lost or destroyed, an Affidavit of Lost or Destroyed Security and Indemnification thereon. Each Pre-Petition Construction Fund Warrant Holder shall deliver the warrants to the Disbursing Agent for exchange into a Certificate not less than thirty (30) days after the Effective Date.

If not so delivered, the Pre-Petition Construction Fund Warrant shall be cancelled and terminated.  In exchange for Pre-Petition Construction Fund Warrant, the Disbursing Agent shall issue to the Creditor having provided the Pre-Petition Construction Fund Warrant to the Disbursing Agent, or to such Creditor's assignee, a Certificate in the face amount of the Pre-Petition Construction Fund Warrant delivered by the Creditor, plus any accrued and unpaid interest thereon to the Effective Date, and stating the Pro Rata Share associated with such Certificate.

All Certificates shall be issued within sixty (60) days of the Effective Date and shall accrue simple interest from the date of issue at the rate of six percent (6%) annually, subject to the terms of this Plan. No preference shall be given to any Certificate based upon date of issuance.

The Certificates issued pursuant to this Plan shall bear clear and unequivocal language identifying that the Certificates are (i) subject to the payment terms set forth in the Plan, (ii) are not guaranteed to pay full interest or return principal face value, and (iii) are not subject to guarantee under Neb. Rev. Stat. §31-755.

In order to ensure that a Pre-Petition Construction Fund Warrant Holder cannot continue to hold Pre-Petition Construction Fund Warrants with a view towards redemption, any and all outstanding warrants not delivered to the Disbursing Agent prior to the 30th day after the Effective Date shall be deemed cancelled and terminated and of no further force and effect.

All Bonds and Post-Petition Construction Fund Warrants issued by the District shall be superior and prior to the Certificates, and the Certificates shall be junior to any Bonds and Post-Petition Construction Fund Warrants.

## V. ALLOCATION OF DISTRICT FUNDS

6

The District shall, within sixty (60) days following the Confirmation Order, utilize the cash and investments with accrued interest thereon on deposit in the Construction Fund to make the following payments:

A.      Administrative and Priority Claims shall be paid in full from the funds in the Construction Fund.

B.      The holders of General Fund Warrants shall be paid in full for all principal and accrued interest due and owing under the terms of the General Fund Warrants.

C.      The sum of Sixty Thousand and no/100 Dollars ($60,000.00) shall be transferred from the Construction Fund to the General Fund for the operations of the District.

D.      The remaining funds in the Construction Fund, if any, after payment of the amounts due under A through C above shall be paid out to Certificate Holders in accordance with their respective Pro Rata Share within ninety (90) days of the issuance of the Certificates.

## VI.  POST-PETITION BOND ISSUANCE

A.      The District shall have an obligation throughout the term of this Plan to issue Post-Petition Bonds to pay all or part of the remaining balance of the Certificates if, in the reasonable discretion of the Fiscal Agent, it will be advantageous to the District and the Certificate Holders. Consideration by the Fiscal Agent shall include, but need not be limited to, interest rates, prevailing tax rates, total valuation of property subject to the District's tax authority and general market conditions.

B.      In the event that the District determines that it is in the best interest of the District and the Certificate Holders to issue Post-Petition Bonds, such Post-Petition Bonds shall be issued by the District.

C.      The Post-Petition Bonds shall be payable from the Construction Fund, and expenses associated therewith, including sinking fund expenditures, shall be allowed expenses of the District.

D.      All Bonds (including all Post-Petition Bonds) and Post-Petition Construction Fund Warrants shall be superior and prior to the claims of Certificate Holders. The Post-Petition Bonds and Post-Petition Construction Fund Warrants shall be granted the priority set forth in Neb. Rev. Stat. §31-755.

7

## VII.  OPERATION OF THE DISTRICT

From the date upon which the Confirmation Order is entered and until the Certificates are paid in full, including accrued interest, the operation of the District shall be governed by the terms of this Plan. This Plan may not be amended except by Court order.

A. **District Funds and Income.**

1.        District Funds. All monetary assets of the District are held in either the General Fund or the Construction Fund. As of the date of December 31, 2012, the total assets held in the General Fund are approximately Four Thousand Seven Hundred Forty-two and 48/100 Dollars ($4,742.48) and the total assets held in the Construction Fund are approximately One Million Three Hundred Thirty-six Thousand Four Hundred Seventy-two and 10/100 Dollars ($1,336,472.10).

The General Fund exists for the purpose of holding funds used in the operation of the District and for payment of General Fund Warrants. Following confirmation of the Plan, the General Fund will hold amounts used for the operating budget of the District and payment of General Fund Warrants.

The Construction Fund receives an allocated portion of the District's tax revenues. Amounts held in the Construction Fund following confirmation of this Plan will consist of amounts established by Article V, above. Remaining amounts in the Construction Fund will be either retained or distributed, as set forth in this Plan, to the Certificate Holders.

2. District Tax Rate**.** The tax rate for the 2012/2013 fiscal year for real estate located within the jurisdiction of the District is ninety cents ($0.90) per One Hundred and no/100 Dollars ($100.00) of assessed valuation, with forty cents ($.0.40) being allocated to the General Fund and fifty cents ($0.50) being allocated to the Construction Fund (the "Tax Levy").  Prior to full payment of the Certificates (including accrued interest), the total Tax Levy shall not be increased or decreased without the order of the Court.  However, the allocation of the Tax Levy between the General Fund and the Construction Fund can be adjusted and altered at any time by the Board of Trustees.   The income from the Tax Levy shall be distributed among the General Fund and the Construction Fund as provided herein.

3. Tax Levy Redistribution. The distribution of the Tax Levy between the General Fund and the Construction Fund shall not be altered or amended prior to full payment of the Certificates (including accrued interest), except to increase the amount assigned to the Construction Fund. After

8

the full payment of the Certificates, the Tax Levy may be adjusted and altered provided always that the Tax Levy assigned to the Construction Fund shall be sufficient to meet all necessary payments on the Bonds issued by the District.

B. **Emergency Fund.** The District shall retain in the General Fund not less than Sixty Thousand and No/100 Dollars ($60,000.00) from the District's operating budget as an emergency fund. The emergency fund shall be used solely in the event of an emergency, defined for the purposes of this Plan as an event or circumstance requiring immediate corrective action or an event which occurs where further significant damage or expense is likely to occur unless corrective action is taken within a reasonable period of time. In no event shall the emergency fund be permitted to accumulate more than Sixty Thousand and no/100 Dollars ($60,000.00). In the event of an emergency resulting in a single expense greater than either seventy-five percent (75%) of the District's budget or greater than seventy-five percent (75%) of the accumulated emergency fund of the District, the District shall have the authority to use some or all of the emergency fund to cover present expenses of the District. In the event that the available emergency fund is not sufficient to cover the costs of such an event, the District may petition this Court for permission to spend other funds of the District, and the Court shall determine whether such expenditure is reasonable and in the best interest of the parties.  In the event any portion of the emergency fund as provided herein is utilized, the District shall adjust its levy and/or budgeted expenses so as to replenish the emergency fund to the level provided for herein.

C. **District Operating Budget.** The operating budget of the District in the year following the Confirmation Order shall be an amount equal to the District's valuation times the Tax Levy allocated to the General Fund. For fiscal year 2013/2014, the Tax Levy allocated to the General Fund shall not exceed Forty Cents ($0.40).  For each year thereafter, the budget may increase two and one-half percent (2.5%) annually provided, however, that the Tax Levy is not increased or decreased in violation of the terms set forth herein. The District shall be required to pay its ordinary operating expenses and maintenance expenses within the terms of the budget, and may not exceed the budget without an order of the Court. The Board may spend less than the maximum budget allowed, in its discretion.

D. **Bond Sinking Funds.**  The District shall maintain sinking funds related to the Bonds issued by the District.  The sinking funds shall be kept in an amount determined by the District to be

necessary to meet ongoing payment obligations of the Bonds and shall not exceed one hundred fifty percent (150%) of the annual debt service of such Bonds.

E. **Payment of Unimpaired Debts.** The District shall, within ninety (90) days following the entry of the Confirmation Order, bring current any arrearages allowed to accrue before or during the pendency of this bankruptcy on any General Fund Warrants and any other payment obligation related to securities issued by the District except payments upon Construction Fund Warrants issued prior to the commencement of this bankruptcy proceeding.

Payments on General Fund Warrants and Certificates issued by the District before, during and after the pendency of this bankruptcy shall be kept current and the District shall not allow such securities to go into default under their terms, except as permitted by this Plan.

F. **Payment to Paying Agent for the benefit of Certificate Holders.** Following the payment and reservation of other amounts contemplated by this Plan, the Construction Fund, including the income attributed thereto and funds held therein, shall be held for the benefit of the Holders of the Certificates. The income of the District from the Tax Levy allocable to the Construction Fund, sewer connection fees, and all other income allocable to the Construction Fund, less amounts to be paid or held by this Plan, including the payments required by Article V herein, shall annually be computed as the amount available for distribution to the Certificate Holders.

On or before the last day of December of each year, the District and Disbursing Agent shall meet to calculate the funds, if any, to be delivered to the Paying Agent for such year. In any year during which there are no funds available for distribution to the Certificate Holders, or amounts available for distribution, including amounts accrued from previous years, do not total at least Fifty Thousand and no/100 Dollars ($50,000.00), the District shall not be required to make a distribution to Paying Agent for the benefit of the Certificate Holders. In any year that there is greater than Fifty Thousand and no/100 Dollars ($50,000.00) available for distribution to the Certificate Holders, the District shall distribute to the Paying Agent amounts available on or before March 1. The Paying Agent shall, on or before March 15, pay to the Certificate Holders their respective Pro Rata Share of such amounts. It is intended, to the greatest degree possible under the terms of this Plan, that the Certificates shall be issued, paid and redeemed in a manner consistent with and allowing for tax exempt status under applicable Internal Revenue Service regulations. All payments will be first

10

applied against accrued interest, if any, due on the Certificates and then to outstanding principal due on the Certificates.

The Paying Agent shall be paid the sum of One Thousand Dollars ($1,000.00) each year there is a distribution to the Certificate Holders. The Paying Agent shall be paid the sum of Two Thousand Dollars ($2,000.00) for the initial fee.  The Paying Agent may collect reasonable fees for administering or recording transfers of Certificates by, to, or among holders thereof. Nothing in this paragraph shall be deemed to prohibit the District from compensating the Disbursing Agent, Paying Agent, or any other party, for services provided in the servicing of securities issued by the District other than Certificates.

Distributions shall be made to the Certificate Holders pursuant to this Plan until all amounts of principal and interest due under the Certificates are paid in full. In the fiscal year during which the total balance due on the Certificates, including accrued interest, is less than Fifty Thousand and no/100 Dollars ($50,000.00), any funds which would be available for distribution to the Certificate Holders shall be so distributed, without regard to the Fifty Thousand and no/100 Dollars ($50,000.00) minimum distribution amount set forth above.  In no event shall distributions be made in excess of amounts necessary to pay principal and interest outstanding on the Certificates. No Creditor of the District or Pre-Petition Construction Fund Warrant Holder shall have any right to receive payment on the Pre-Petition Construction Fund Warrants except as set forth in this Plan.

G.     **Construction of Additional Public Improvements**.  The District shall be entitled to construct additional public improvements in the District prior to payment of the full amounts due under the Certificates.  The construction of additional public improvements will be performed in phases identified by the District and the Fiscal Agent ("Phase" or "Phases")  Upon confirmation of the Plan, the District shall be entitled to construct additional public improvements in one (1) Phase at a time until all Phases are fully developed or the Certificates are paid in full, whichever is earlier.  If the Board, by resolution duly adopted, reasonably determines that eighty percent (80%) of the lots within a Phase will be sold within one (1) year after construction of the public improvements in that particular Phase, and the Fiscal Agent concurs with the Board's resolution, the District shall be entitled to construct additional public improvements in the Phase identified by the Board.  In such event, the District shall be entitled to issue Construction Fund Warrants to pay for such public

11

improvements.  If the District elects to construct additional public improvements in a Phase as provided herein while the Certificates are outstanding, the District shall levy special assessments as provided by Nebraska law for one hundred percent (100%) of the cost of such improvements.  All proceeds of such special assessments shall, initially, be used to pay such Construction Fund Warrants and such Construction Fund Warrants shall be superior to the Certificates as to the proceeds of such special assessments.  Upon payment of the full amounts due under the Certificates, the District will be entitled to return to conventional financing of capital improvements to be constructed in the future.

## VIII. <u>IMPLEMENTATION OF THE PLAN</u>

The implementation and consummation of this Plan shall occur as follows:

A. **Voting Procedures and Effective Date.** Copies of this Plan and the accompanying Disclosure Statement shall be sent by the District to all Pre-Petition Construction Fund Warrant Holders, along with a ballot included for the purpose of voting in favor of or against the Plan. Only by completing, signing and returning the ballot may a creditor vote for or against this Plan.

In order for this Plan to become effective, the following conditions must be met:

(a) The Plan must have been accepted by the Holders of at least two-thirds (66.7%) in amount and more than one-half (50%) in number of the Pre-Petition Construction Fund Warrant Holders.

(b) The Court shall have confirmed the Plan as required by the terms of this Plan and by Section 1129 and Section 943 of the Bankruptcy Code.

B. **Other Documents.** All parties, by agreeing to the terms of this Plan, agree to execute and deliver, as appropriate, all documents reasonably required to implement and effectuate the terms of this Plan.

## IX. <u>RETENTION OF JURISDICTION, ENFORCEMENT, SETTLEMENT OR ADJUSTMENT TO CLAIMS</u>

The Court shall retain exclusive jurisdiction of all matters arising under, or related to, this case, until this case is closed, specifically limited, however to the following:

A. To classify, allow or disallow Claims, direct distributions under the Plan and adjudicate all controversies concerning classifications, objections to or allowances of any Claim.

B. To enforce post confirmation performance of the Plan against any person with regard to the District's Chapter 9 estate, but not otherwise.

C. To herein determine all Claims arising from the rejection of executory contracts and leases, if any, which are included in the District's Chapter 9 estate and to consummate rejection and termination thereof in connection with the Debtor's Chapter 9 estate, but not otherwise.

D. To liquidate damages or estimate Claims in connection with any disputed, contingent, or unliquidated claims.

E. To adjudicate the validity of or the authority of the District to make or undertake any purchase, sale or contract made or undertaken by the District during the pendency of the District's Chapter 9 case.

F. To recover all assets and property belonging to the District's Chapter 9 estate wherever located.

G. To hear and determine all actions and proceedings which relate to preconfirmation matters brought by the Debtor arising in or relating to this case or arising under the Bankruptcy Code, whether such action or proceeding is brought before or after the Filing Date.

H. To hear and determine all controversies, suits, and disputes that may arise as to pre-confirmation matters and the interpretation of or enforcement of the Plan or the provisions of the Disclosure Statement.

I. To hear and determine all requests for compensation and/or reimbursement of expenses by professionals retained by the District which may be made after the Confirmation Date.

J. To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary or desirable for the successful implementation of the Plan as provided in Section 945 of the Code.

## X. MODIFICATIONS TO PLAN

This Plan may be modified, amended or corrected under Section 942 of the Code upon application of the District at any time prior to the entry of the Confirmation Order without notice and

13

hearing and without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, provided, however, that the Court find that such modification or correction does not materially and adversely affect any Creditor or the Claim of any creditor. The Plan may be modified after confirmation upon order of the Court after such notice and opportunity for hearing as may be appropriate.

## XI. BINDING EFFECT AND DISCHARGE

Confirmation of this Plan shall bind all persons and entities as provided by Section 305 of the Code and the obligations of the Debtor shall be only those as described and included in this Plan. All other obligations of the District, including but not limited to those of Pre-Petition Construction Fund Warrant Holders, shall be discharged.

Confirmation of the Plan will not discharge any Claims which any creditor or interest Holder of the District may have against any third party.

The Court, in the Confirmation Order, and at its discretion, will, by its specific language, forever prohibit persons from taking any action in any way which may be inconsistent with this Plan or in violation of the terms or legal effect of the Confirmation Order.

SANITARY AND IMPROVEMENT
DISTRICT NO.   494 OF DOUGLAS COUNTY,
NEBRASKA,

By:   */s/ Martin P. Pelster*_____
     Martin P.   Pelster, #19223
Of   CROKER, HUCK, KASHER, DeWITT,
     ANDERSON & GONDERINGER, L.L.C.
     2120 South 72nd Street, Suite 1200
     Omaha, Nebraska 68124
     (402) 391-6777

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | Case No.: BK 13-_____ |
| | ) | |
| SANITARY AND IMPROVEMENT | ) | **CHAPTER 9** |
| DISTRICT NO. 494 OF DOUGLAS | ) | **CERTIFICATE OF MAILING** |
| COUNTY, NEBRASKA | ) | |

_____

Sanitary and Improvement District Number 494 of Douglas County, Nebraska (the "District") hereby certifies that the foregoing Chapter 9 Plan of Adjustment, Disclosure Statement and Ballot were mailed by United States Mail, postage prepaid, to each Creditor of the District permitted to vote thereon, as named on the Creditor Matrix submitted of even date herewith, on _____, 20___.

SANITARY AND IMPROVEMENT
DISTRICT NO. 494 OF DOUGLAS COUNTY,
NEBRASKA,


By:   */s/ Martin P. Pelster_____*
      Martin P.   Pelster, #19223
Of    CROKER, HUCK, KASHER, DeWITT,
       ANDERSON & GONDERINGER, L.L.C.
      2120 South 72nd Street, Suite 1200
      Omaha, Nebraska 68124
      (402) 391-6777


00503487.DOC